I'm Lawrence Lossing. I'm from San Francisco. With me this morning is Cal Stacey from Billings, Montana. Please speak directly into the microphone so we can get it. And we together represent two individuals, a corporation and an insurance company in this case. Brack Duker and Jerome Broussard are the individuals. The Columbia Falls Aluminum Company is the corporation. And Travelers, by various names, is the insurance carrier. Would Mr. Stacey be sharing time with you this morning or not? I think probably not, Your Honor. All right. Very good. I will, in any event, reserve a few minutes to the end of the microphone. You may do so. Just watch the clock. Thank you. As the Court is undoubtedly aware, this is an insurance coverage dispute, and it has to do with the question of whether or not the employment benefit liability coverage or endorsement under the defendant's insurance policies covered the exposure or risk that my clients, the non-insurance clients, faced in the underlying litigation. It's a very- Counsel, getting right to the heart of the matter, it is obvious that the panel, that the insurance covers acts of administration of the plan, interpreting who's covered and that sort of thing, but what can we look to to suggest that it goes so far as to, in effect, ensure that the employer will actually make contributions in any year? Is there some language that extends the coverage that far? Yes. And that is because, first of all, of course, we are here dealing with a judgment on the pleadings, which is summary judgment, what summary judgment is to a full-scale trial on the merits. And the only issue that is that or the standard, rather, that the trial court should have applied here is whether or not it appears beyond a doubt that the nonmoving party, my clients, cannot prove any facts that would support its claim for relief. That's a very high standard. Now, here, what in effect has happened is that the trial court, the district court, has taken upon itself to say, I'm looking at the issue of administration and here's what the insurance company, the defendants, meant by the term administration. And yet there is no evidence before the Court on that issue. And in fact, the only things before the Court were the allegations of my complaints, which all say that the underlying complaints arose out of disputes over the administration of the profit-sharing plans. The policies of insurance themselves and, of course, the complaints and the underlying action policies were attached to the complaints as exhibits. The definition of administration, going to the heart of what is the purported is the reasoning of the district court, says that there are three different categories of conduct that may turn out to amount to administration, and these are already before the Court, but providing interpretation regarding your employee benefit programs, then handling records in connection with the program, and then effecting enrollment or cancellation or termination of an employee under that program. At least two of these different kinds of conduct may well turn out, under the facts of this case, if they are ever presented to the light of day, may turn out to constitute administration within the meaning of this policy, the meaning of the policy, of course, being interpreted as seen by the insured, not as an insurance person or a sophisticated lawyer, but as an ordinarily informed individual. Are you relying on one, two, or three under administration? Two and three, both, Your Honor. Two and three. Handling records in connection with your employment benefits program. Well, that would be a stretch, wouldn't it, to say that that somehow or other compels the employer to actually make a contribution in a given year? It may very well be, Your Honor. The point is that at this point, at this stage in the proceeding, because there has been no evidence on the issue, either on what really was in issue in the underlying case. Now, admittedly, it was thoroughly litigated in the underlying proceedings, but those proceedings and the findings there are not properly before the Court here and were not. And the other issue, of course, is what was the state of mind of the insurer, defendant in this case, and the lawsuit. Mr. Lawson, I'm not familiar with the law of the State, but I am familiar with the California law. Do we start with the plain meaning and then go, if there is an ambiguity to the reasonable expectation of the insured, and then if there's an ambiguity, construe it against the insurer in a three-step process? No, no. The Bank of the West rationale is not adopted in Montana. Instead, it is that if there is an ambiguity, it is immediately construed against the insurer. So you skip the middle step. If there is an ambiguity, it goes directly to construe it against the insurer. Correct. Sort of like the old California rule. Yes. Is it part of your interpretation that effecting dot, dot, dot, the termination dot, dot, dot of employees is possibly administration because part of the termination is the payment of their termination benefits? Well, honestly, no, Your Honor. I mean, I appreciate the lifeline, but I don't think in this case that it's – that can fairly be said to be what was an issue in the underlying cases. To my knowledge, and I know the record reasonably well, there was no contention that people were improperly terminated from the program by the plan manager, by CFAC. It was – the real issue was whether or not there was a proper determination made by CFAC under its – under the organic agreements or proclamations by which it said it would make contributions, namely within the exclusive discretion of the board of directors as to what constituted distributable profits. That was the – that's the starting point from which monies are allocated to the program. And that is the – that was, in fact, really what was centrally at issue in the underlying cases is what – what did that mean? Did CFAC properly interpret its own program? And the program was obviously developed in somewhat of a – well, it wasn't developed with the same formality that an ERISA program would be, for example. And so there were issues and questions about whether or not the – the program was being properly interpreted by CFAC. That is, what – to what extent was CFAC correctly determining in its own discretion the amounts of money or the proportion of profits or the net versus gross amount of profits that were distributable to the – to the program? The interpretation of the employee benefits program was the central issue in the underlying cases. Those cases never went to trial, as the record shows. They were settled. So there never was a determination of that. But administration here says providing interpretations to your employees. You're talking about whether the company properly interpreted its own plan as requiring it make certain payments to the profit-sharing plan. Actually, well, no, the definition is ambiguous in that respect, because the way I read it and the way a reasonable insured could read it is this, providing interpretation regarding your employee benefits program. That is, leaving out the entire clause of – and giving counsel to your employees. And as a matter of fact, if you take a look at some of the cases that are in the record here, other earlier versions of this semi-standard industry form for an employee benefits liability program breaks that out into two separate categories. Number one, regarding – providing interpretations regarding your plan, and secondly, giving counsel. The economy bookbinding case, for example, involves a Maryland casualty policy form that does have those two different – two different – And where do you allege in your complaint that the failure of the underlying company to provide interpretations regarding its program caused the lawsuit and therefore the need for your defense? If I understand the Court's question, the answer is that in each of the complaints as to – in each of the two complaints, one filed by CVAC and one filed by Travelers, it is alleged that as to each of the five underlying cases, the – the res gestae was the administration – the interpretation of and therefore the allocation of funds to those programs. That was the interpretation. And in fact, that was hotly disputed throughout the underlying proceedings. So the – your position is that in the underlying lawsuit, the company's interpretation of its own contracts or profit-sharing plan was central to whether they put any money in it or not. Yes. Yes, absolutely. And that interpretation – that interpretation is the conduct, the act out of which the alleged liability of the named insured, CVAC and its officers, arose because of claimed damages to the employees who were the supposed beneficiaries of that program. So the – what happened here is, it seems to me, that the district court, in ruling on this as a matter of judgment on the pleadings, simply took it upon itself to say, here's what the parties meant, or here's what the insurance company meant. And it provided its own dispositive determination as to whether or not – or what the documents meant. It didn't take into account, because it had no opportunity to do so, the reasonable expectations of the insured, the – all the applicable standards under which Montana courts decide whether or not an ambiguity exists. And if so, how would it be treated? So you're suggesting, perhaps, that one has to go beyond the language of the insurance policy? One certainly has – yes, in this case, because we are talking not just about the language of the policy, but its application to the underlying claims. I don't think you can – one cannot decide these issues in a vacuum. It's necessary to understand the nature of the claim. And in this case, the district court had no access to that. All it had was the pleadings. If this were a summary judgment motion, which, you know, arguably it should have been converted into if the district court intended, under Rule 12c, to consider it as such, then this record would be replete with evidence about what the parties intended, what was really alleged in detail in the underlying cases. There would – there may very well have been records from the underlying proceedings, maybe the court's decisions, certainly evidence from those proceedings. There probably would have been declarations or depositions taken in connection with this case, all of which would have helped the court to understand what was intended by the parties as a matter of interpretation under Montana law when the word interpretation of policy benefits or the phrase is used in the policy. But the precipitous use of the device of judgment on the pleadings here precluded all that. And we've got, obviously, a case of substantial size here. A lot of money is involved. And for this – for this controversy, spanning so many years, so many parties, so much money, to be resolved simply on the basis of the judgment on the pleadings is equivalent in a way to a demurr in California, is just – is far beyond what the, I believe, Congress intended when it adopted that. The Court has gone directly to this issue of administration. I – perhaps the Court can – Well, it's the central issue. We realize the stacking of issues that have to get you there. But there are a couple of others, but I don't think that they require very much discussion here. It's clear that the mere fact that a profit-sharing plan was an adjunct to a labor compensation agreement has nothing to do with the application of the policy, because all of the other benefits that are also described in that same section of the policy that talks about what amounts to an employment benefit plan are of a similar character. They are – they are things that are offered to a prospective employee or to existing employees to get them to come or to stay. The mere fact that they are maybe in lieu of wages is, again, makes no difference. And there's an awful lot of ink spilled in this case over ERISA-related concepts, which are clearly not an issue here. If anything, they're sort of only an issue in an inverse sort of way, because they – there are certain liabilities, namely ERISA fiduciary liabilities, that are excluded from coverage, but by implication, then, non-ERISA or non-fiduciary liabilities, either ERISA or non-ERISA, would be covered. And the exclusion, as the district court sought out on its own, having to do with investment or non-investment of funds as an exclusion under the policy, I think, is also a red herring. Mr. Lossing, pardon me if I interrupt you, but I'm looking at your complaint for declaratory relief at ER1 and following, and I would really be helped a great deal if you would point out to me in what paragraph of that complaint is the allegation made that the underlying lawsuits involved an issue of CFAC failing properly to interpret the profit-sharing plan. As I understand the Somersill and Bobby Gilmore cases, the claims were that they simply didn't pay, not that they improperly interpreted it. The allegations were that CFAC had itself improperly interpreted its own program. Where in your complaint does it say that? I have attached – it does not say that in my complaint. My complaint says only, both of the complaints, that the underlying claims arose out of administration, quote, unquote. But the – sorry, the complaints in the underlying actions were themselves also attached, and those complaints read – I mean, they're long, but there is plenty, plenty of ammunition there for the conclusion that those complaints, each of them, involved in some fashion the administration, the application, the implementation of the – of the profit-sharing plan. Because I thought that the allegations of the Somersill and Gilmore complaints simply said CFAC agreed to pay money in, 50 percent of the profits, in good years and didn't do it, period. But the key – The word interpretation doesn't jump off the page. Your Honor, and the reason that it doesn't jump off the page is, of course, we're proceedings, but I can represent to the Court that the central issue in the underlying litigation was the question of how that clause, distributable profits, unquote, was to be interpreted and then applied. That was the central issue. I'll answer a follow-up there, but otherwise I'll reserve the last couple of minutes  You may reserve. Thank you, Your Honor. Good morning. May it please the Court, my name is William Savino. With me is my partner, Stephen Smurdy. We are with the firm of Rifkin-Ratler, and we represent Walsall Insurance Company and employers of Walsall Insurance Company in this matter. Judge B., I would like to very directly respond to some of the questions that you asked my colleague, and I'd like to be very clear. Nowhere ever in the underlying complaints, the five underlying complaints filed by the plaintiffs against CFAC, was the word interpretation ever used. Nowhere in the declaratory judgment action in this matter was the word interpretation ever used. Nowhere in the tender of insurance made to our clients was the word interpretation ever used.  If I may quote from the record to directly respond to your question, Judge B., and I'm quoting with respect to the aluminum workers' trade council complaint filed against CFAC, and it is at excerpt number six at page 115 in the record before the Court, where this statement is said. These are not my words, but the allegations of the aluminum workers against CFAC. The dispute between the parties is not one that concerns the administration of the plan, but one that concerns payments due to be made under the plan. That was the dispute. You can look at Gilmore 1, Gilmore 2, Gilmore 3, Somersill, or the aluminum workers' complaint. They are all to the same effect. Counsel, let me ask my question now. Yes, Your Honor. You just heard Mr. Relossing say that the central issue in all of this litigation was the interpretation of the word distributable profits. Now, what is your response to that? In part, let me, by reference, incorporate my most previous response. It had nothing to do with interpretation. But briefly, administration, again, if I may, from the policy is defined as interpreting or handling or the enrollment termination of participants in the plan. Here, CFAC admits the following. CFAC says we held the exclusive discretion with respect to whether there would be distributable profits sufficient to make the wage payments under this profit-sharing plan. Those are their words, which they do not dispute on this appeal. This Court has held in IT versus American Life Insurance Company that when a plan employee has the authority to allow or disallow a benefit, that is not ministerial in nature, but in fact are the actions of a fiduciary. And here in this lawsuit, pardon me, in the five underlying lawsuits, there was nothing ministerial that was alleged against CFAC. In fact, it was just the opposite. It was that, and if you look at the Gilmore complaint in particular, they talk in allegations as follows. One, that CFAC wrongfully determined within its sole discretion, acting as a fiduciary, withheld in its own discretion wages that were due to the CFAC employees. Number two, that they concealed the fact that there were profits that were being withheld. That they acted fraudulently. Those are not character of a ministerial act, but in fact show that they were acting as fiduciaries. They were not interpreting anything. The first time, candidly, Your Honor, that we observed the word interpret in these proceedings, trial court and on appeal, was after, excuse me, after the trial court's determination, the district court's determination, and for the first time in their brief in chief in this matter. We never saw the word interpret. And I might add again in response to a question made to Judge Bee, never in any of the proceedings in this matter did CFAC argue that any of the policy provisions were ambiguous. Why? Because on their face, their plain meaning is unmistakably unambiguous. Administration, meaning interpretation, handling or enrollment of planned participants, there's no mistake that those are ministerial acts, not the acts that were alleged against CFAC in every single one of the five underlying complaints. Counsel, this is a little unusual in that Judge Lovell decided this case on the pleadings. Normally, we see these come up on summary judgments where there's at least a record that we can look at. What's your response? I'm prepared to respond to that. The declaratory judgment suit dealt essentially with whether or not our client had a duty to defend. And whether it be in the State of Colorado, the State of California, the State of Washington, the State of New York, the duty to defend, as we all well know, is determined from a reading of the complaint, assuming that the allegations would be proven true against the plaintiff, excuse me, against the defendant, CFAC, and then comparing the allegations of the complaint, again, assuming that they would be proven true, against the four corners of the contract of insurance. And that process is highly susceptible in every jurisdiction in these United States to a dispositive motion, namely a motion for judgment on the pleadings. The declaratory judgment complaint is the face. Attached to it is the contract of insurance and the five, in this case, the five underlying complaints. The comparison is undertaken, and a judgment on the pleadings is a very direct vehicle by which we can dispose of the issue presented, namely whether there is a duty to defend. Yes, Judge. You would agree that in addition to the pleadings of the plaintiff's case and the pleadings of the underlying case that were attached thereto, it would be proper to take into consideration on the judgment of the pleadings any judicially noticed facts. Were there any? In this particular case, Your Honor, Judge Lavelle did review the holdings made in the case where it was declared that CFAC wrongfully withheld the wages of its employees and that this profit-sharing plan was not an employee benefit plan, an issue that was not addressed by my colleague, but that it was a labor compensation plan. And in his deliberation on our motion for judgment on the pleading, Judge Lavelle did examine the rulings from the underlying case, but, very important, and I must make this point, only to underscore his independent assessment of the allegations of the five underlying complaints, where he independently found that there was no coverage. Was there any objection to his taking judicial notice? There was no objection made by CFAC with respect to Judge Lavelle's procedure of taking judicial notice of the adjudicative facts from the underlying case. But, again, I must point out, because we were, quite correctly, Judge Scanlon, moving for judgment on the pleadings, and Judge Lavelle properly understood his charge under the rules, and he said at least seven times in his decisions, four times on page 27 of his decision, where he said, I'm looking at the plaintiff's complaints, the five underlying plaintiff's complaints against CFAC. They don't make out a duty to defend. They don't make out administration. This was not in the administration of a plan. This was not an employee benefit plan. Now, what about this group? Judge Lavelle looked at that and then paused and said, I can take judicial notice of other adjudicative facts. I'm not arguing it's not an employee's benefit plan, because it's big and black in the contract that a profit-sharing plan is an employee's benefit plan. Well, Your Honor, merely because the words profit-sharing and plan are used in a compensation agreement between CFAC and employees, with great respect, I must say, it does not, therefore, make it a profit-sharing plan. And in this case, because you can have profit-sharing plans that offer the payment of wages, and, in fact, contrary to what CFAC's counsel has argued, ERISA is very important on this point, that if you have, as part of a profit-sharing plan, pardon me, if you have, as part of a wage payment, a profit-sharing plan, that does not make it an employee benefit plan. And our policy only responds to an employee benefit plan. It doesn't make it an employee benefit plan for purpose of ERISA. We're not talking about that. We're talking about the insurance contract. The insurance contract defines profit-sharing plan as an employee benefit program. But, and I think, you know, you're better off on the other points than I am. Now, what about Mr. Lawson's point that Judge Lovell should have taken into account the reasonable expectation of the parties? Now, can he do that on pleadings, or does that require testimony? At two points. That argument that I heard from this podium only 12 minutes ago was the first time I've heard anything about the reasonable expectations of the insured. And I believe we'll only reach the reasonable expectations of the insured after we've used all the aids to contract construction before we immediately construe an ambiguity against an insurer. But please let me be sure and firm on my statement. The issue of ambiguity, the issue of reasonable expectations of the insured, never was contained in the briefs that we've argued with CFAC in the past. So I don't believe we ever get to reasonable expectations on this motion for judgment on the pleadings. It truly is not to oversimplify it and take any dignity away from that very important procedural tool that the rules provide us. But a judgment on the pleading is a very straightforward and simple approach to disposition of a matter. Look at the pleadings, what's attached to those pleadings, the contracts of insurance in this matter. And on the duty to defend, when you compare the pleadings to the four corners of the complaint, is there a duty? And Judge Lovell could not have been clearer. In fact, the strength of his decision, I believe, and I'd like to quote, comes from the simplicity of the words that he used. Permit me. He said this on my strong point, if you will. There is simply, he said, no principled way, no principled way, to shoehorn a claim alleging failure to fund a profit-sharing program into an insurance provision that provides coverage for providing interpretations, giving counsel, handling records, or providing evidence. Or affecting the enrollment, termination, or cancellation of employees in an employee benefit program, if it was an employee benefit program. So the strength, I think, again, of his conclusions, comes from the very principled approach, his principled rationale, and the simplicity of the words that he used to find that there was no obligation on Warsaw's part to make, to provide a duty to defend, to shoehorn a claim. I would like to just perhaps step back from all the arguments, just for a moment, if I could. And when Mr. Smirdy and I were preparing for this, we would say, well, let's not repeat to the Court what's contained in our papers. So if we step back from everything, and we try to examine the central question that's posed before the Court, it's very simple. CFAC did not pay its employees as it promised it would pay its employees under the Labor Compensation Plan, and that was not a mistake in calculation or interpretation, or that we handled the record and lost it. No, CFAC just didn't pay. But now what CFAC wants Warsaw to do is pay the wages that they didn't pay. So the central question before this Court, we believe, with great respect, is when does an insurance policy, and at that, a liability insurance policy, an employee benefit liability endorsement to a liability policy, ever pay for wages that are due and owing by an employer to its employees? The answer to that question is not contained in the pages that we've submitted to you. The answer to that question is as simple as it is obvious, never. An insurance company doesn't pay for wages that they were supposed to pay. They wrongfully withheld wages from their employees. And I've heard the phrase Bank of the West standing at the podium here. Bank of the West is clear that that is not even damages under a liability contract of insurance. If I am holding on to what is rightfully someone else's property, their wages in this case, how can that ever be damages that an insurance company would ever have to respond to? To do so, to determine that Warsaw would have to pay in this case, would turn insurance law up on its head. It was their promise to pay. And they shouldn't be able to shift their liability, their promise, their obligations, their wrongfully withholding of wages to their insurer. That would be wrong. I just briefly would make one other point. You've used the phrase the stacking of arguments, and I'd like to just address that quickly and then sit down. Our first position, of course, is that this was not an employee liability program. And I'm not going to belabor the point, except that upon your deliberations, I would ask you, please, to consider this. The words profit-sharing plan, yes, are used in the labor compensation agreement. And yes, I admit, they're used in our policy. But they're used under the title employee benefit program, not wage benefit program. And then when you look at the words profit-sharing plan, they're surrounded by other words in the contract of insurance. For example, life, health and disability plans, pension plans, unemployment plans. And a law school professor of mine told me that words in a contract, just like people, are judged by the company that they keep. And when you look at the words profit-sharing plan used in our contract of insurance, they ought to be judged not in isolation, as CFAC would have this court do, but they ought to be judged by the words that surround them. And the words that surround the words profit-sharing plan are long-recognized traditional concepts of employee benefits. But even if you were to find that it was an employee benefit somehow, our next argument is, and I will not belabor this point, is that the liabilities alleged in the underlying complaints, which gave Judge Lavelle the ease with which he could grant judgment on the pleadings, were not in the administration of these profit-sharing plans, this labor compensation plan. But if you were to reject that, we return and say, well, if it was an employee liability program, our policy says if you are acting in the capacity of a fiduciary in connection with that plan, and they don't dispute that, they said we decided and determined what would be distributable profit, then there's an exclusion. It says we don't cover you if you're acting as a fiduciary. We cover you for these ministerial contracts. But should you reject that, we come back and say insurance ought not apply when they are wrongfully withholding wages that rightfully belong to someone else. So with great respect, we ask this Court to affirm the trial court's decision in every respect. Thank you, Your Honor. Thank you, counsel. Mr. Lawson, you have some reserved time. A quick point. Mr. Savino has mentioned the IT case, which is in the briefs. That case actually is emblematic of exactly my point. That was a case decided under ERISA, and as a matter of fact, the language that Mr. Savino has relied upon actually comes out of the Department of Labor guideline for what constitutes a fiduciary under ERISA. Again, this is not an ERISA case. The complaints, each of the five underlying complaints, allege kinds of damages and theories of liability that are other than ERISA. Yes, they also do include ERISA. But a good example is the AWTC case, which was originally filed as a cross complaint, naming only non-ERISA theories, and then was amended to add ERISA but not to take anything else away. All five of these have a kind of exposure that is clearly not touched by the exclusion that WASA has put into its policy with respect to ERISA fiduciary. May I ask you, what is the best piece of evidence in the complaints, the underlying complaints, and the judicially noticed facts which pose the record before Judge Lovell that indicates that CFAC's failure to pay into the profiteering plan was in whole or in part due to its interpretation of the phrase distributable profits? I can answer that directly, Your Honor, and that is in the – and I'm taking this just as a quick response. But in the very first of the complaints, the Somersill case, there is language there where the plaintiff specifically says that he had determined, had discerned that there was a discrepancy in the calculation of the benefits payable into the program, and that he was contesting the way in which that calculation was done. If you take a look at the economy bookbinding case from New Jersey, that case actually held that the potential for liability arising out of the calculation of benefits was the basis on which the Court denied summary judgment in favor of the insurer and required a continued defense. Were any of CFAC's answers to any of these complaints made part of the record before Judge Lovell? They were not, Your Honor. They were not. And I would say, and I know my time is up, but I would say in closing here that the no principled way of shoehorning, et cetera, is exactly the point. This goes to factual issues. There is no way that Judge Lovell on this record could say, I know what was in the mind of the insurance company, what they intended, or what was in the mind of the insured as a reasonable consumer of insurance, in interpreting what it is that that policy meant. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn. Thank you. Hear ye, hear ye. All parties having had business with the Honorable Judges of the United States Courts of Appeals for the Ninth Circuit will now depart. For this Court, the discussion stands adjourned.
judges: McKay , O'scannlain, Bea